# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2020

Lyle W. Cayce
Clerk

No. 20-40090
Summary Calendar

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARCIAL MARTINEZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:19-CR-78-4

Before CLEMENT, HIGGINSON, and ENGELHARDT, *Circuit Judges*.
PER CURIAM:*

Marcial Martinez pleaded guilty to one count of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, and the district court sentenced him to 300 months of imprisonment and a five-year

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-40090

term of supervised release.   On appeal, Martinez only challenges the calculation of his sentencing range under the Sentencing Guidelines.

For preserved errors, we review the district court's interpretations of the Guidelines de novo and the district court's factual findings for clear error. *United States v. Haines*, 803 F.3d 713, 743 (5th Cir. 2015).   "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013) (internal quotation marks and citation omitted).

First, Martinez argues that the district court erred in applying the U.S.S.G. § 2D1.1(b)(1) firearm enhancement because there was insufficient evidence establishing a nexus between the pistol found in his vehicle and the drug trafficking activity.  However, the pistol was in Martinez's vehicle at the Dallas location where he paid the agents for transporting the liquid methamphetamine, and that factual scenario suffices to establish a temporal and spatial relationship among Martinez, the pistol, and the drug trafficking activity.  *See United States v. Salado*, 339 F.3d 285, 294 (5th Cir. 2003). Because the district court's factual findings were plausible based on the entire record and, thus, not clearly erroneous, the district court did not err in applying the two-level enhancement under § 2D1.1(b)(1).  *See Alaniz*, 726 F.3d at 618.

Second, Martinez challenges the calculation of his base offense level under § 2D1.1(a) because the presentence report fails to establish why a 5% reduction for diesel present in the liquid methamphetamine was a reasonable method for calculating the amount of methamphetamine in the seized liquid. Martinez also claims that there is no evidence that the methamphetamine could not have easily been separated from the diesel and other substances for purposes of calculating the quantity of methamphetamine.

Even if we assumed that the reduction value was insufficient, the error was harmless given that the threshold weight for a base offense level of 38 is 45 kilograms of methamphetamine, nearly 500 kilograms less that the amount attributed to him by the presentence report, and Martinez offers no evidence that diesel comprised that amount of the mixture. *See* § 2D1.1(c)(1); *United States v. Solis*, 299 F.3d 420, 462 (5th Cir. 2002). Similarly, Martinez provides no evidence, outside of conjecture, that the representative sample was unreliable for purposes of approximating the weight of the liquid methamphetamine and establishing the purity of the substance. Moreover, in the absence of rebuttal evidence, the district court was free to extrapolate the drug quantity from those representative samples. *See United States v. Dinh*, 920 F.3d 307, 313 (5th Cir. 2019); *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006). Thus, Martinez has not shown that the district court clearly erred by estimating the drug purity based on the unrebutted facts in the presentence report. *See Dinh*, 920 F.3d at 313; *Alaniz*, 726 F.3d at 618-19.

Finally, Martinez argues that the district court erred when it declined to apply a mitigating role adjustment under U.S.S.G. § 3B1.2. Another member of the drug trafficking organization informed the undercover agents that "Marcial" was the "money guy" and would arrive at the Dallas location to pay for the transportation of the methamphetamine, and several hours later, Martinez arrived and paid the agents over $20,000. This information indicates that Martinez played an active role in the drug trafficking organization, at least in regard to financial matters, and fully understood that he was paying for illegal narcotics. *See* § 3B1.2, comment. (n.3(C)(iv)). Thus, the district court did not clearly err in denying a mitigating role reduction because Martinez failed to show that he was substantially less culpable than the average participant in the criminal activity. *See United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016); *Alaniz*, 726 F.3d at 618.

No. 20-40090

AFFIRMED.