# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2021

Lyle W. Cayce
Clerk

No. 20-50343

United States of America,

*Plaintiff—Appellee*,

*versus*

Yurika Huerta,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CR-250-2

Before Elrod, Willett, and Engelhardt, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:[*]

Yurika Huerta pleaded guilty to possessing a firearm as a convicted felon. At sentencing, the district court applied a four-level enhancement for possession of the firearm "in connection with another felony offense"—distribution of methamphetamine. The district court also imposed a period of supervised release and required drug treatment. The district court delegated to the probation officer supervision of the "modality, duration,

---

[*] Judge Willett concurs in the judgment only.

intensity, etc." of that treatment. Because the evidence supported the enhancement and because the district court did not delegate a core judicial function, we AFFIRM.

## I.

Officers, responding to a 911 call about a person with a gun, arrived at a Super 8 Motel in Odessa, Texas. They found the appellant Yurika Huerta alongside Frank Badilla, Amber Velarde, and a fourth individual. Huerta possessed a Bulgaria Arms SAM7K 7.62x39mm automatic pistol loaded with 30 rounds of ammunition, and she appeared to be intoxicated. When officers approached Badilla, he threw a Sig Sauer P238 .380 ACP pistol to the ground. Badilla also possessed 2 ounces of marijuana and $9,658 in cash. Velarde discarded a bag containing 81.6 grams of methamphetamine before she was detained. The fourth individual possessed 5.2 grams of methamphetamine.

Badilla told the officers that he and Huerta had come to the motel to meet Alan Oszuel Gonzalez about a vehicle. Badilla said that he and Huerta swapped firearms when they arrived at the motel before they went to Gonzalez's room. They did not, however, enter Gonzalez's room. Badilla then admitted to the officers that they were meeting Gonzalez, not about a vehicle, but rather about 15 pounds of methamphetamine that Badilla had purchased but had not received. Though she said nothing about the methamphetamine, Huerta told the officers that she had agreed to go, armed, to the motel with Badilla.

Huerta pleaded guilty to possession of a firearm by a convicted felon. 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A probation officer prepared a presentence investigation report. The report recommended applying a four-level sentencing enhancement for possession of a firearm in connection with another felony offense—drug trafficking. U.S. Sent'g Guidelines Manual (U.S.S.G.) § 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n 2018); *see also* 21 U.S.C.

§ 841(a)(1), (b)(1)(A)(viii).  The report noted Badilla's $9,658 in cash and Velarde's 81.6 grams of methamphetamine.

The report also recommended the following special condition of supervised release:

> The defendant shall participate in a substance abuse treatment program and follow the rules and regulations of that program. The program may include testing and examination during and after program completion to determine if the defendant has reverted to the use of drugs.  The probation officer shall supervise the participation in the program (provider. location, modality, duration, intensity, etc.).  During treatment, the defendant must abstain from the use of alcohol and any and all intoxicants.  The defendant must pay the costs of such treatment if financially able.

At sentencing, Huerta objected to the proposed four-level sentencing enhancement.  She did not object to the proposed substance-abuse-treatment condition.  The district court orally adopted the presentence investigation report, saying "I find the report to be accurate.  I adopt it and the application of the United States Sentencing Guidelines contained in the report."

The district court then issued its written judgment sentencing Huerta to 52 months' imprisonment.  The judgment included the following condition of supervised release:

> The defendant shall participate in a substance abuse treatment program and follow the rules and regulations of that program. The program may include testing and examination during and after program completion to determine if the defendant has reverted to the use of drugs.  The probation officer shall supervise the participation in the program (provider, location, modality, duration, intensity, etc.).  During treatment, the defendant shall abstain from the use of alcohol and any and all

intoxicants.    The defendant shall pay the costs of such treatment if financially able.

Huerta timely appealed both the application of the sentencing enhancement and the imposition of the substance-abuse-treatment condition.

## II.

In an appeal of a district court's application of a sentencing enhancement, we review findings of fact for clear error and conclusions of law *de novo*.  *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019); *see also United States v. Scott*, 821 F.3d 562, 567 (5th Cir. 2016).  "A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole."  *Dinh*, 920 F.3d at 310 (quoting *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991)).

The sentencing guidelines prescribe a four-level sentencing enhancement for possession of a firearm "in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  The term "another felony offense" includes "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  *Id.* § 2K2.1 cmt. n.14(C).  Distribution of more than 50 grams of methamphetamine is a federal offense punishable by a minimum ten years' imprisonment, and so it is "another felony offense" for purposes of the sentencing enhancement.    21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); U.S.S.G. § 2K2.1 cmt. n.14(C).

This enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."  U.S.S.G. § 2K2.1, cmt. n.14(B).  In applying the enhancement, the district court may consider "(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced,

procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity . . . all acts and omissions of others that were . . . reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1).

Huerta came armed to the motel with Badilla, and firearms are " 'tools of the trade' of drug trafficking." *United States v. Cooper*, 979 F.3d 1084, 1090 (5th Cir. 2020) (quoting *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010)), *cert. denied*, No. 20-7122 (Mar. 22, 2021). She was found with a firearm near 81.6 grams of methamphetamine discarded by Velarde and $9,658 in cash possessed by Badilla—these amounts are indicative of drug trafficking. *See United States v. Mays*, 466 F.3d 335, 341 (5th Cir. 2006) ("[M]ere possession of a quantity of drugs inconsistent with personal use will suffice for the jury to find intent to distribute."); *United States v. Rains*, 615 F.3d 589, 594 (5th Cir. 2010) (considering the presence of $3,000 of cash circumstantial evidence of intent to distribute). "[I]n light of the record read as a whole," it is far more than "plausible" that Huerta possessed the firearm in connection with felony methamphetamine trafficking. *Dinh*, 920 F.3d at 310 (quoting *Sanders*, 942 F.2d at 897).

Huerta nevertheless contends that the government asks us on appeal to make findings of fact and consider evidence that was not before the district court. According to Huerta, the government now advances a new theory of a joint undertaking between Huerta and Badilla. Not so. The government relies primarily on the money possessed by Badilla and the drugs discarded by Velarde, as well as Huerta's conduct with Badilla, to support the conclusion that Huerta's possession of a firearm was "in furtherance of" drug trafficking. That is exactly what the district court did as well. The district court adopted Huerta's presentence investigation report which laid out in detail Badilla and Huerta's actions prior to their arrest and the guns and drugs found on or near Huerta. *See* U.S.S.G. § 1B1.3(a)(1)(A) (allowing

the district court to consider "all acts and omissions committed, aided, [or] abetted" by the defendant). As explained above, the circumstantial evidence available to the district court supports its application of § 2K2.1(b)(6)(B). The district court did not err in applying the four-level enhancement.

## III.

Huerta also argues that the district court erred by delegating to her probation officer the authority to supervise the "modality, duration, intensity, etc." of her drug treatment as a condition of supervised release. We review preserved challenges to conditions of supervised release for abuse of discretion; we review forfeited challenges for plain error. *See United States v. Franklin*, 838 F.3d 564, 566 (5th Cir. 2016). A defendant forfeits a challenge to a condition of supervised release if the defendant had the opportunity to object in the district court but did not. *United States v. Diggles*, 957 F.3d 551, 560 (5th Cir.) (*en banc*), *cert. denied*, 145 S. Ct. 825 (2020).

In *Diggles*, we made clear that district courts must orally pronounce discretionary special conditions of supervised release both to satisfy the defendant's right to be present at sentencing and to give the defendant an opportunity to object. *Id.* at 556–60. Special conditions that must be pronounced are those that are discretionary under 18 U.S.C. § 3583(d). *Id.* at 558.

When a presentence investigation report recommends a list of special conditions, a defendant has ample opportunity to review those conditions. *Id.* at 560. The district court, then, satisfies its duty to pronounce by orally adopting the report at sentencing. *Id.* The advance notice of the presentence investigation report and the district court's oral declaration that it is adopting the report give the defendant an opportunity to object. *Id.*

In this case, Huerta's presentence investigation report recommended substance-abuse treatment as a condition of supervised release. In particular,

the report recommended delegating to the probation officer supervision of the "modality, duration, intensity, etc." of treatment. Substance-abuse treatment is a discretionary condition of supervised release under § 3583(d), so it must be orally pronounced. *Id.* at 558. The district court at sentencing adopted the presentence investigation report as a whole, saying "I find the report to be accurate. I adopt it and the application of the United States Sentencing Guidelines contained in the report." The district court thus orally pronounced the challenged condition. *See id.*

Huerta did not object. We therefore review her delegation challenge for plain error. *See id.* at 559; *United States v. Dean*, 940 F.3d 888, 890–91 (5th Cir. 2019). To establish plain error, Huerta must show "(1) an error (2) that is clear or obvious, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Huor*, 852 F.3d 392, 398 (5th Cir. 2017) (quoting *United States v. Mendoza-Velasquez*, 847 F.3d 209, 212 (5th Cir. 2017)). Huerta has not shown error that is clear or obvious.

"[A] district court cannot delegate to a probation officer the 'core judicial function' of imposing a sentence, 'including the terms and conditions of supervised release.'" *United States v. Barber*, 865 F.3d 837, 839 (5th Cir. 2017) (quoting *Franklin*, 838 F.3d at 568). This limitation comes from Article III of the Constitution, which entrusts judicial functions to the judicial branch. *Franklin*, 838 F.3d at 567–68; *see also* U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."). Delegations to probation officers should not be made lightly.

In the context of conditions of supervised release, a district court may delegate only the "details" of the conditions; it may not delegate imposition of the conditions themselves. *Franklin*, 838 F.3d at 568 (quoting *United*

*States v. Lomas*, 643 F. App'x 319, 324 (5th Cir. 2016)). We recently addressed the dividing line between permissible and impermissible delegations in a pair of companion cases—*United States v. Martinez* and *United States v. Medel-Guadalupe*. 987 F.3d 432 (5th Cir. 2021); 987 F.3d 424 (5th Cir.), *cert. denied*, No.20-7483, 2021 WL 1520967 (Apr. 19, 2021).

Both cases concerned whether a district court may delegate to a probation officer the decision to require "inpatient or outpatient" treatment. *See Martinez*, 987 F.3d at 434; *Medel-Guadalupe*, 987 F.3d at 430. Citing each other, *Martinez* concluded that the delegation was impermissible following a relatively short 10-*month* sentence and *Medel-Guadalupe* concluded that the delegation was permissible following a relatively long 10-*year* sentence where it was clear that the district court continued to maintain a final say over the decision. *Martinez*, 987 F.3d at 436 (citing *Medel-Guadalupe*, 987 F.3d at 431); *Medel-Guadalupe*, 987 F.3d at 431 (citing *Martinez*, 987 F.3d at 436). *Martinez* emphasized the significant liberty interests at stake during confinement for inpatient treatment. 987 F.3d at 436. *Medel-Guadalupe* emphasized the long term of imprisonment and the district court's "final say over the decision" upon release "nearly a decade from now." 987 F.3d at 431.

Read together, *Martinez* and *Medel-Guadalupe* establish two principles regarding delegation to probation officers. First, "the district court will have the final say" on whether to impose a condition. *Medel-Guadalupe*, 987 F.3d at 431; *see also Martinez*, 987 F.3d at 435. Second, although a probation officer's authority extends to the "modality, intensity, and duration" of a treatment condition, it ends when the condition involves a "significant deprivation of liberty." *Medel-Guadalupe*, 987 F.3d at 431; *Martinez*, 987 F.3d at 434, 436. Both principles spring from solicitude for the liberty interests of the defendant.

No. 20-50343

Applying these principles to this case, we conclude that the district court did not clearly err by delegating supervision of the "modality, duration, intensity, etc." of treatment to the probation officer. The context of the phrase in this case confirms this: Huerta's participation in treatment is mandatory; the probation officer "supervise[s] the participation"; and the phrase "modality, duration, intensity, etc." parenthetically describes that supervision. There is no indication here that the probation officer would be able to lock Huerta up for inpatient treatment, which would be a significant deprivation of liberty following Huerta's relatively short sentence. *See Martinez*, 987 F.3d at 435. Nor is there any indication that the probation officer may otherwise significantly deprive Huerta of her liberty during treatment. And, of course, the district court has the final say over the imposition of the conditions upon release. *Cf. Medel-Guadalupe*, 987 F.3d at 431; *see also Martinez*, 987 F.3d at 435.

\* \* \*

For the reasons set forth above, the judgment of the district court is AFFIRMED.