**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4786
_____

UNITED STATES OF AMERICA

v.

DAVID BEST
            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-13-cr-00195-001)
District Judge: Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit LAR 34.1(a)
January 28, 2016
_____

Before: VANASKIE, SHWARTZ, and RESTREPO, *Circuit Judges*.

(Filed: February 12, 2016)

_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

David Best was arrested and charged with trafficking prescription pills, and related offenses. After a jury trial, Best was convicted of three counts of possession with intent to distribute and distribution, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); brandishing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii); three counts of burglary of a pharmacy, in violation of 18 U.S.C. § 2118(b); and four counts of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). We will affirm.

## I

Because we write for the parties, we review only the essential facts, and do so in the light most favorable to the Government as the verdict winner. *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008).

From July 2011 until May 2013, Best illegally sold "[t]housands" of prescription pain pills, primarily oxycodone and oxymorphone (Opana). Supp. App. III 1379. Best illegally obtained many of these pills from his girlfriend, Jade Gagianas, a pharmacy technician. Gagianas stole bottles of oxycodone and Opana from a pharmacy where she worked. For each stolen bottle, Best paid Gagianas around fifty to one hundred dollars. Gagianas stole approximately eleven bottles (eleven hundred pills) of oxycodone and nine bottles (nine hundred tablets) of Opana. Discovered by her employer, Gagianas was allowed to resign.

Gagianas soon obtained another pharmacy job. There, the pills were secure, so Gagianas stole blank prescriptions instead. Gagianas then forged the prescriptions by filling in doctors' names and DEA numbers, information she accessed at work. Gagianas

2

also filled in fraudulent patient information, using the names of drug addicts, which Best provided to her. Best disseminated the prescriptions to the fraudulent "patients," who filled the prescriptions at pharmacies for Best. The Government ultimately recovered approximately forty of these prescriptions.

In addition to the pills Best obtained through Gagianas, Best burglarized, on three separate occasions, the pharmacy where Gagianas originally worked. Best also bought pills from other drug dealers.

During the course of his drug trafficking, Best also obtained a gun. The precipitating event that led to Best obtaining a gun was a burglary of Best's house on Memorial Day weekend of 2012. The burglar, Richard Dlubak, stole thousands of dollars in drug proceeds and a few Opana pills. Best did not call the police. Instead, Best borrowed a gun. On June 20, 2012, Best enticed Dlubak to again burglarize Best's house. Specifically, Best told Dlubak that there were thousands of dollars and two hundred pills stored in the house. After Dlubak took the bait and returned, Best confronted him, brandished the gun and tied up Dlubak with duct tape. The police interrupted the incident and later recovered the gun used by Best. Although Best denied it to the police, he was actively dealing drugs and disseminating fraudulent prescriptions at that time. Best was arrested for the Dlubak incident, but was released from jail after one night; the charges were later dismissed.

In September 2012, Gagianas broke off her relationship with Best, who continued dealing drugs. In April 2013, the Drug Enforcement Administration (DEA) conducted two "controlled buy[s]" from Best. Supp. App. I 178. On May 1, 2013, the DEA

3

executed a search warrant on Best's house and recovered over two thousand dollars and thirty-two oxycodone pills. Thereafter, Best was arrested on the instant charges.

This case was tried before a jury. At trial, Best testified and confessed to almost all the charges. On the stand, Best disputed only two counts: a count of death after consumption, for which he was acquitted (21 U.S.C. § 841(a)(1), (b)(1)(c)), and brandishing a firearm in furtherance of drug trafficking, for which he was convicted (18 U.S.C. § 924(c)(1)(A)(i)). Best was convicted of all remaining charges.

The District Court imposed a sentence of 288 months' imprisonment and 10 years supervised release. This timely appeal followed.

## II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. On appeal, Best raises three issues: (1) the sufficiency of the evidence for brandishing a firearm in furtherance of drug trafficking (18 U.S.C. § 924(c)(1)(A)); (2) the denial of a downward adjustment for acceptance of responsibility (U.S.S.G. § 3E1.1); and (3) the imposition of an upward adjustment to the drug trafficking guideline for "use of affection" (U.S.S.G. § 2D1.1(b)(15)(A)).[1] We address each issue in turn.

## A

Best challenges the sufficiency of the evidence for brandishing a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c)(1)(A). We must affirm the jury

---

[1]	In the November 1, 2014 edition of the Sentencing Guidelines, the use of affection adjustment was renumbered from Section 2D1.1(b)(14)(A) to Section 2D1.1(b)(15)(A), but not otherwise changed.

verdict if there is substantial evidence, viewed in the light most favorable to the Government, that would permit a reasonable finder of fact to convict. *United States v. Ciavarella*, 716 F.3d 705, 730 n.17 (3d Cir. 2013).

Best concedes that he knowingly possessed and brandished a gun. He disputes only that he did so in furtherance of drug trafficking. For the reasons below, we will affirm.

Section 924(c)(1)(A) applies, in relevant part, to "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . ." 18 U.S.C. § 924(c)(1)(A).

The Government may establish the required nexus between a firearm and drug trafficking in either of two ways. First, the Government may prove the gun was used "during and in relation to" drug trafficking. In the alternative, the Government may prove that the gun was possessed "in furtherance of" drug trafficking. In the case of Mr. Best, the jury found each of these alternatives, as do we.

## 1

The "during and in relation to" clause of Section 924(c)(1)(A) has two components, that the gun was used "during" and "in relation to" drug trafficking. *United States v. Williams*, 344 F.3d 365, 371-75 (3d Cir. 2003). Best does not explicitly contest the "during" component; nor could he. Best brandished a gun, pointing it at two men, on June 20, 2012. At the time, Best was actively dealing drugs. He admittedly sold drugs the day before, and his fraudulent prescriptions were passed on June 13, 15, 19, and 23.

Best also used a gun "in relation to" drug trafficking. Under the "in relation to" clause, a gun "must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238 (1993). "Instead, the gun at least must 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Id.* (citation omitted).

Best used a gun to facilitate and protect his drug trafficking. Best's home was burglarized and his drug proceeds and Opana pills were stolen. In response, Best armed himself with a gun, enticed the burglar to return with the lure of money and pills, and then brandished the gun in retaliation. In this way, Best used the gun for "protection or intimidation," which renders this an "'ordinary case' under § 924(c)(1)." *Id.*

**2**

We also hold that Best possessed the gun "in furtherance of" drug trafficking for the purpose of Section 924(c)(1)(A). Under the "in furtherance of" clause, the gun must have "advanced or helped forward a drug trafficking crime." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004). This Court considers the following, nonexclusive factors:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* This Court may sustain a conviction, even if some of these factors are absent. *United States v. Walker*, 657 F.3d 160, 173 (3d Cir. 2011).

6

In Best's case, the circumstances leave no doubt that Best used a gun "in furtherance" of drug trafficking. Best disseminated dozens of fraudulent prescriptions, at a profit of at least five thousand dollars each. His home was burglarized and his drug proceeds and pills stolen. In response, Best obtained a gun and hid it in his house, the same place where he stored both thousands of dollars and illegally-obtained prescription pills. Best then retaliated against the burglar by violently brandishing the gun. Best's actions were consistent with the expert trial testimony of a DEA agent, that drug dealers use guns to "get revenge," "earn respect on the street" and not appear "weak." Supp. App. I 24-25. On this record, a reasonable jury could convict. *See United States v. Bobb*, 471 F.3d 491, 496-97 (3d Cir. 2006).

**B**

Best further challenges the denial of a downward adjustment for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines. We review factual findings underlying the denial of an acceptance of responsibility adjustment for clear error. *United States v. Lessner*, 498 F.3d 185, 199 (3d Cir. 2007). The "sentencing judge is entitled to great deference on review" of acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. n.5.

A downward adjustment for acceptance of responsibility applies where a "defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). A district court must assess the totality of the circumstances. *United States v. McDowell*, 888 F.2d 285, 292 n.2 (3d Cir. 1989). The adjustment may apply after a jury

trial. However, these are "rare situations" such as "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." U.S.S.G. § 3E1.1, cmt. n.2.

The defendant bears the burden of establishing acceptance of responsibility by a preponderance of the evidence. *United States v. DeLeon-Rodriguez*, 70 F.3d 764, 767 (3d Cir. 1995). In the instant case, Best argues that he accepted responsibility because he testified at trial and admitted all counts, except death after consumption and brandishing a firearm in furtherance of drug trafficking.

Having examined the record, Best's argument is not persuasive. The District Court properly examined the totality of the circumstances. Best pled not guilty to every charge and put the Government to its burden. *Id.*; *United States v. Muhammad*, 146 F.3d 161, 168 (3d Cir. 1998). Best repeatedly denied the conduct comprising a violation of Section 924(c)(1)(A), for which the evidence was sufficient. For example, Best testified that he borrowed a gun "for protection for my family" and that the connection between the gun and his drug trafficking was "[n]one whatsoever." Supp. App. III 1307-08. Best further testified that "I never felt that I needed to get a gun for protection whatsoever, for my drugs at least. The gun was solely for the protection of my household." Supp. App. III 1308.

"The sentencing judge [was] in a unique position to evaluate" this testimony and to assess Best's acceptance of responsibility. U.S.S.G. § 3E1.1, cmt. n.5. From this record, the District Court could reasonably conclude that Best did not "truthfully admit[] the conduct comprising the offense(s) of conviction . . ." U.S.S.G. § 3E1.1, cmt. n.1; *see also United States v. Patten*, 397 F.3d 1100, 1105 (8th Cir. 2005). Accordingly, we will

8

affirm the holding of the District Court that this was not one of the "rare" circumstances where a defendant demonstrated acceptance of responsibility despite proceeding to trial.

C

Finally, Best challenges the District Court's decision to increase the drug trafficking guideline based upon Best's "use of affection" under Section 2D1.1(b)(15)(A) of the Sentencing Guidelines. We exercise plenary review of a district court's interpretation of the Guidelines, but review for clear error a factual challenge to the application of the Guidelines. *United States v. Richards*, 674 F.3d 215, 220 (3d Cir. 2012). Under the applicable clear error standard of review, we are constrained to affirm.

The "use of affection" adjustment to the drug trafficking guideline, Section 2D1.1(b)(15)(A) of the Sentencing Guidelines, has four elements. We discuss each element, as it applies to the instant case.

First, under the "use of affection" adjustment, the defendant must have received a Section 3B1.1 (aggravating role) adjustment. Best concedes this factor.

Second, the defendant must have "used fear, impulse, friendship, affection, or some combination thereof" to involve another in drug trafficking. U.S.S.G. § 2D1.1(b)(15)(A). Best admitted at trial that he convinced Gagianas to steal pills and blank prescriptions by telling her that he loved her. He admitted that she was never in trouble before meeting him. He admitted that if not for him, Gagianas "wouldn't be here," facing criminal charges. Supp. App. III 1298. On this record, the District Court did not commit clear error by finding that Best "used . . . affection" to involve Gagianas in drug trafficking. App. II 147.

9

Third, the use of affection adjustment requires that the other individual "received little or no compensation." U.S.S.G. § 2D1.1(b)(15)(A). Best concedes that he did not challenge this factor in the District Court and, therefore, is subject to plain error review. *See* Fed. R. Crim. P. 52(b); *United States v. Fountain*, 792 F.3d 310, 318 (3d Cir. 2015). On plain error review, we will reverse only where the error was obvious under the law at the time of review, and the error affected substantial rights. *United States v. Bernard*, 373 F.3d 339, 341 (3d Cir. 2004). An error affects substantial rights when it is prejudicial and affects the outcome of the proceedings. *United States v. King*, 454 F.3d 187, 193 (3d Cir. 2006) (citation omitted).

In Best's case, the District Court did not commit plain error in concluding that Gagianas received "little . . . compensation." U.S.S.G. § 2D1.1(b)(15)(A). Best paid Gagianas approximately eight hundred dollars for stealing pills. He paid her nothing for stealing blank prescriptions. As the Government argues, eight hundred dollars is very little, relative to the street value of the pills. At trial, a DEA agent estimated the total value of the pills Best illegally obtained at $600,000, although Best likely consumed "a considerable portion" of these pills himself. Supp. App. I 203-04. Under plain error review, the lack of compensation element is satisfied.

Fourth, the use of affection adjustment requires proof that the other "individual had minimal knowledge of the scope and structure of the enterprise." U.S.S.G. § 2D1.1(b)(15)(A). If we were writing on a blank slate, we might question whether Gagianas had "minimal knowledge" of Best's drug trafficking. However, this is not our standard of review, and we cannot conclude that the District Court committed clear error.

10

At a post-trial hearing on this issue, Gagianas testified that she "didn't know too much" about the scope and structure of Best's drug trafficking. Supp. App. IV 1814. Gagianas did not know how many pills Best sold. She did not know how much money he made. Gagianas only saw Best make two drug transactions. Gagianas ended her relationship with Best in September 2012, and there is no evidence that she knew anything about his drug trafficking between that time and his arrest in May 2013.

We recognize that the record could support the view that Gagianas had more than "minimal" knowledge, as she was Best's girlfriend and a primary source of his pills. However, under clear error review, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (internal quotation marks and citation omitted). Thus, we will affirm.

## III

For the foregoing reasons, we conclude that the evidence is sufficient to support a conviction for brandishing a firearm in furtherance of drug trafficking. We conclude that the District Court properly denied a downward adjustment for acceptance of responsibility. We conclude that the District Court did not commit clear error by increasing the drug trafficking guideline based upon Best's "use of affection." Thus, we will affirm.