**REVISED December 9, 2019**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2019

Lyle W. Cayce
Clerk

No. 18-50627

UNITED STATES OF AMERICA,

>  Plaintiff – Appellee,

v.

ALEXIS AGUILAR-ALONZO,

>  Defendant – Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, WIENER, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

The original opinion in this matter was filed on August 27, 2019. *United States v. Aguilar-Alonzo*, 936 F.3d 278 (5th Cir. 2019). We withdraw our previous opinion and substitute the following.

Alexis Aguilar-Alonzo pleaded guilty to aiding and abetting the possession with intent to distribute marijuana. The district court imposed a two-level enhancement to Aguilar-Alonzo's base offense level under U.S.S.G. § 2D1.1(b)(15)(A) (2016) for "us[ing] fear, impulse, friendship, affection, or some combination thereof to involve another individual" in the offense.

No. 18-50627

Aguilar-Alonzo appeals, contending that the evidence does not support the two-level enhancement and that the district court clearly erred in applying the enhancement. We agree and VACATE and REMAND.

I.

Aguilar-Alonzo, his girlfriend Yudilet Chavez-Hernandez, and eight others were charged with aiding and abetting the possession with intent to distribute more than 100 kilograms of marijuana but less than 1000 kilograms in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Aguilar-Alonzo pleaded guilty without a plea agreement.

After her arrest, Chavez-Hernandez told investigators that "she had been dating Aguilar-Alonzo for approximately one year and . . . knew [he] was involved in drug trafficking," but that she had never participated in "picking up a load of narcotics" herself prior to this offense. This time, Aguilar-Alonzo requested that she accompany him "to pick up the [marijuana]." She told the investigators that she agreed to participate "out of fear he would break up with her."

The presentence investigation report (PSR) calculated a base offense level of 24 under the 2016 Sentencing Guidelines §§ 2D1.1(a)(5) and (c)(8). It recommended a two-level enhancement under § 3B1.1(c) of the Guidelines because Aguilar-Alonzo "was an organizer, leader, manager, or supervisor." Because of this two-level enhancement for leadership, the PSR recommended an additional two-level enhancement for two independent reasons. First, Aguilar-Alonzo "us[ed] friendship or affection to involve [Chavez-Hernandez] in the illegal transport of controlled substance[s], [Chavez-Hernandez] received little or no compensation [from] the transport of the controlled substances, and [Chavez-Hernandez] had minimal knowledge of the scope and

2

structure of the enterprise." *See* U.S.S.G. § 2D1.1(b)(15)(A) (2016).[1]   Second, Aguilar-Alonzo, "knowing that [Chavez-Hernandez] was pregnant, involved [her] in the offense." *See* § 2D1.1(b)(15)(B)(iii).  With a three-level reduction for acceptance of responsibility under § 3E1.1(a) and (b), Aguilar-Alonzo's total offense level was 25.  Based on the offense level of 25 and a criminal history category of II, the Guidelines range was 63 to 78 months of imprisonment.

Aguilar-Alonzo objected to the two-level enhancement for use of affection, asserting that "Chavez-Hernandez had more [than minimal] knowledge" of the scope and structure of the criminal enterprise and that merely being "in a dating relationship does not trigger" that enhancement.  The probation officer asserted that the requirements for the enhancement were satisfied.   Regarding use of affection, the probation officer noted that (1) "Chavez-[Hernandez] was engaged in a romantic relationship with [Aguilar-Alonzo]," (2) Aguilar-Alonzo "was aware Chavez-[Hernandez] was pregnant with his child at the time of the instant offense," and (3) "Chavez-[Hernandez] agreed to help [Aguilar-Alonzo] as she feared [he] would terminate his relationship with her."

At sentencing, Aguilar-Alonzo contended that nothing in the record indicated that he "made any kind of action or said any words" suggesting that he would end the relationship if she refused to participate in the offense. Aguilar-Alonzo asserted that, even though she may have felt that way, he "ha[d] to make some sort of actual action or words" to be eligible for the enhancement.  In addition, Aguilar-Alonzo contended that Chavez-Hernandez had more than minimal knowledge of the scope and structure of the enterprise: "[S]he knew [that] he was involved in drug trafficking," she saw him pick up

---

[1] This section has been renumbered as § 2D1.1(b)(16)(A) effective November 1, 2018, but the language remains the same.

No. 18-50627

and unload drugs in the past, and she then agreed to participate in the offense following his request.

Aguilar-Alonzo also objected to the second independent basis for the two-level enhancement, claiming it was unwarranted under § 2D1.1(b)(15)(B) because "it [was] unclear whether [Aguilar-Alonzo] knew at the time of the offense that [Chavez-Hernandez] was pregnant." Aguilar-Alonzo asserted that "he didn't find out until she was arrested," at which point she called from jail to tell him "I think I just found out I'm pregnant," and that he had a letter from her to him explaining "[she] wish[ed she] would have told [him] that [she] was pregnant." The prosecutor conceded that the government did not have evidence proving that Aguilar-Alonzo knew of Chavez-Hernandez's pregnancy at the time of the offense.

The district court explicitly found that the facts did not establish whether Aguilar-Alonzo knew, at the relevant time of the offense, that Chavez-Hernandez was pregnant and declined to sustain the enhancement under § 2D1.1(b)(15)(B). Nevertheless, the district court determined that the two-level enhancement was warranted under § 2D1.1(b)(15)(A) because it was "apparent from the facts . . . that [Aguilar-Alonzo] used fear, impulse, friendship, affection, or some combination thereof to involve [Chavez-Hernandez]" in the offense. The court overruled Aguilar-Alonzo's objection to the enhancement for a leadership role. With this two-level enhancement for the use of affection, the total offense level was 25, resulting in a Guidelines range of 63 to 78 months. The district court declined to depart from the Guidelines recommendation and sentenced Aguilar-Alonzo to 70 months of imprisonment and 5 years of supervised release.

On appeal, Aguilar-Alonzo challenges only the two-level enhancement under § 2D1.1(b)(15)(A), asserting that the district court clearly erred in concluding that he "used fear, impulse, friendship, affection, or some

combination thereof to involve" Chavez-Hernandez in the offense because "[t]he [G]uideline's plain language requires active employment of affection to induce another to participate in the offense," but "[n]o evidence supported a finding that Aguilar[-Alonzo] actively induced Chavez[-Hernandez's] participation by playing on affection." Aguilar-Alonzo further argues that this error prejudiced him because, without the erroneous two-level enhancement, his Guidelines range would have been 60 to 63[2] months, and there is no indication that the district court would have imposed the same 70-month sentence if it had considered the lower range.

## II.

"To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). At the sentencing hearing, Aguilar-Alonzo argued that he did not take any action or make any statement that would have led Chavez-Hernandez to believe that he would end the relationship if she refused to participate in the offense. His argument was sufficiently specific to alert the district court to the nature of the issue raised on appeal. *See id.*

"We review the district court's interpretation and application of the Guidelines *de novo*, and its factual findings for clear error." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013). "A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole." *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019) (quoting *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991)). The proponent of an adjustment to the defendant's base offense level bears the burden of establishing the

---

[2] Aguilar-Alonzo's brief states 60 to 71 months, but the proper calculation yields 60 to 63 months.

factual predicate "by a preponderance of the relevant and sufficiently reliable evidence." *United States v. Richardson*, 781 F.3d 237, 249 (5th Cir. 2015) (quoting *United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir. 1990)).

"Where . . . the district court commits a significant procedural error such as miscalculating the Guidelines range, we must vacate the sentence unless the error did not affect the selection of the sentence imposed." *Neal*, 578 F.3d at 274. "The proponent of the sentence has the burden of establishing that the error was harmless." *Id.*

### III.

On appeal, Aguilar-Alonzo only challenges the district court's two-level enhancement under U.S.S.G. § 2D1.1(b)(15)(A) (2016), which reads:

> If the defendant receives an adjustment under § 3B1.1 . . . and[:]
> (i) The defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and (iii) the individual had minimal knowledge of the scope and structure of the enterprise . . . increase by 2 levels.

The district court concluded that all three parts of this Guideline were met and applied the two-level increase. Aguilar-Alonzo specifically challenges the district court's finding that he "used affection to involve . . . [Chavez-Hernandez] in the" offense under part (i) of the Guideline quoted above. Aguilar-Alonzo contends that it was clear error for the district court to apply this enhancement and that the error prejudiced him by resulting in a greater sentence than the court would have otherwise imposed. In order to resolve this case, we must determine the proper interpretation of the term "used" in the Guideline, ascertain whether it was clear error for the district court to apply the enhancement in light of our interpretation of the word, and determine whether any error was harmless.

No. 18-50627

A.

Aguilar-Alonzo and the government dispute both the proper interpretation of the verb "used" in the context of the Guidelines and the application of that interpretation to these facts.  Aguilar-Alonzo contends that "[t]he plain language of [§ 2D1.1(b)(15)(A) requires] that a defendant must actively employ or play upon affection to induce another to commit [an] offense."  Alternatively, the government argues that "used" encompasses a broader definition, including "passively exploiting another's affection."  We agree with Aguilar-Alonzo's interpretation of "used" under the Guidelines.

We interpret the Sentencing Guidelines according to "the typical rules of statutory interpretation," "[s]tarting with the text of the relevant guideline." *United States v. Stanford*, 883 F.3d 500, 511 (5th Cir. 2018).  "If the language is unambiguous, and does not lead to an 'absurd result,' the court's inquiry begins and ends with the plain meaning of that language." *Id.* (quoting *United States v. Koss*, 812 F.3d 460, 473 (5th Cir. 2016)).  "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993).

In a variety of criminal statutory contexts, we have consistently interpreted the ordinary and natural meaning of the verb "use" to require active employment of something, as has the Supreme Court.  For example, the Supreme Court explained that proof of "use" in "[18 U.S.C.] § 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey v. United States*, 516 U.S. 137, 143 (1995), *superseded by statute on other grounds as stated in Welch v. United States*, 136 S. Ct. 1257 (2016).  In *Jones v. United States*, the Supreme Court determined that 18 U.S.C. § 844's requirement "that [a] building be 'used' in an activity affecting commerce" was "most sensibly read to mean active employment for

No. 18-50627

commercial purposes, and not merely a passive, passing, or past connection to commerce." 529 U.S. 848, 855 (2000). This interpretation of "use" has been reaffirmed many times.[3] The proper interpretation of "used" under the Guideline requires active employment of affection in return for involvement in the offense, and that interpretation is consistent with the previous interpretations discussed above.

The only other circuit court of appeals decision to address the "used . . . affection" provision of § 2D1.1(b)(15)(A) is consistent with our interpretation of the word. The Third Circuit, in *United States v. Best*, affirmed the district court's two-level enhancement for Best's use of affection to involve his girlfriend in a drug trafficking offense. 639 F. App'x 848, 853–54 (3d Cir. 2016). At trial, "Best admitted . . . that he convinced [his girlfriend] to steal pills and blank prescriptions by telling her that he loved her," "that she was never in trouble before meeting him," and "that if not for him, [his girlfriend] 'wouldn't be here,' facing criminal charges." *Id.* at 853. In that case, Best was held subject to the two-level enhancement after he explicitly told his girlfriend that he loved her for the purpose of getting her to steal pills for him. *Best* supports our interpretation of "use" under § 2D1.1(b)(15)(A) as requiring active employment of affection on the part of the defendant.

## B.

We next address whether it was clear error for the district court to apply the two-level enhancement under the Guidelines. "A factual finding is not

---

[3] *E.g.*, *Smith*, 508 U.S. at 229 (reaffirming earlier precedent defining "use" as "'to employ' or 'to derive service from'" (quoting *Astor v. Merritt*, 111 U.S. 202, 213 (1884)); *see also Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("As we said in a similar context in *Bailey*, 'use' requires active employment."); *United States v. Chapa-Garza*, 243 F.3d 921, 926 (5th Cir. 2001) ("'[U]se' refers to volitional, *purposeful*, not accidental, employment of whatever is being 'used.'"), *overruled on other grounds by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc).

clearly erroneous as long as it is plausible in light of the record read as a whole." *Dinh*, 920 F.3d at 310 (quoting *Sanders*, 942 F.2d at 897). As the proponent of the adjustment to Aguilar-Alonzo's base offense level, the government bears the burden of establishing the factual predicate of that adjustment "by a preponderance of the relevant and sufficiently reliable evidence." *Richardson*, 781 F.3d at 249 (quoting *Alfaro*, 919 F.2d at 965). The government fails to meet this burden. After reviewing the evidence, we conclude that the district court's finding that Aguilar-Alonzo used affection to involve Chavez-Hernandez in the offense is implausible as it is not supported by the record. As a result, the district court's application of the two-level enhancement under § 2D1.1(b)(15)(A) was clear error.

Under our interpretation of the verb "used" in § 2D1.1(b)(15)(A), the evidence in the record does not support a two-level enhancement to Aguilar-Alonzo's offense level because he did not actively employ or play upon affection to induce involvement by Chavez-Hernandez in the offense. The evidence consists of two primary facts, neither of which support a finding that Aguilar-Alonzo actively used affection to induce Chavez-Hernandez's involvement in the offense. First, Aguilar-Alonzo asked Chavez-Hernandez to participate in the offense. Second, Chavez-Hernandez asserted that she agreed to participate "out of fear [Aguilar-Alonzo] would break up with her" if she did not participate.

The government essentially argues that, just because Aguilar-Alonzo had the opportunity to use affection to recruit his girlfriend, we should assume that he did, despite the lack of evidentiary support. The government attempts to support this result by emphasizing that Chavez-Hernandez had no previous involvement in criminal activity, had little to gain financially from the crime, and had a limited role in the crime. However, the government offered no support for the proposition that Aguilar-Alonzo did something or said

something to cajole or force her to help him.  Her fear that Aguilar-Alonzo would break up with her was simply her own subjective assessment of the situation.  We see no indication that Aguilar-Alonzo actually did or said anything about their relationship when he asked her to help him.  There is nothing in the record whatsoever that indicates Aguilar-Alonzo even knew of Chavez-Hernandez's subjective fear that he might break up with her but for her involvement in the offense.  "No evidence suggests that [Aguilar-Alonzo] cajoled, wheedled, threatened a breakup, or otherwise actively played on [Chavez-Hernandez's] affection or emotions about the relationship."  Perhaps, if Aguilar-Alonzo knew of this fear prior to his request for Chavez-Hernandez's involvement, a finding that he used affection may be appropriate.  That is not the case here.  Chavez-Hernandez's own subjective assessment cannot be solely relied on as evidence that Aguilar-Alonzo used affection to induce her involvement.

It cannot be that the mere existence of a romantic, familial, or any other kind of pre-existing relationship would support a two-level enhancement under § 2D1.1(b)(15)(A) when one person, who fits the other criteria under the Guidelines, recruits another to assist in the offense. Aside from the existence of the relationship and Chavez-Hernandez's subjective fear of a breakup, there is nothing in the record that could even possibly relate to use of affection.

Neither does Chavez-Hernandez's pregnancy support the conclusion that Aguilar-Alonzo actively used affection to involve her in the offense.  The district court explicitly found that the facts did not establish whether Aguilar-Alonzo knew, at the relevant time of the offense, that Chavez-Hernandez was pregnant.  The fact that Aguilar-Alonzo and Chavez-Hernandez at some point had a sexual relationship, without more, is not enough to establish that Aguilar-Alonzo "actively employed" affection to involve her in the offense.

10

No. 18-50627

The Third Circuit's opinion in *Best* well illustrates why the facts of the instant case do not support the same two-level use of affection enhancement. *See* 639 F. App'x at 853–84.  Unlike in *Best*, no record evidence demonstrates that Aguilar-Alonzo actively employed affection to induce involvement by Chavez-Hernandez.  In *Best*, the defendant told his girlfriend that he loved her in order to convince her to steal pills and blank prescriptions. *Id*. at 853.  In the present case, Aguilar-Alonzo simply asked Chavez-Hernandez for her help.  We see nothing in the record that indicates Aguilar-Alonzo actively employed the continuation of their relationship in return for Chavez-Hernandez's involvement in the offense.  Aside from adopting the PSR, which stated that Chavez-Hernandez agreed to participate in the offense out of fear that Aguilar-Alonzo would break up with her—an uncommunicated, subjective feeling—the district court did not identify how Aguilar-Alonzo actively employed affection to induce involvement by Chavez-Hernandez in the offense.  We therefore conclude that the district court's finding that Aguilar-Alonzo used affection to involve Chavez-Hernandez in the offense is implausible in light of the evidence in the record, and—as a result—that the district court's application of the two-level enhancement under § 2D1.1(b)(15)(A) was clear error.

### C.

"Where . . . the district court commits a significant procedural error such as miscalculating the Guidelines range, we must vacate the sentence unless the error did not affect the selection of the sentence imposed." *Neal*, 578 F.3d at 274.  "The proponent of the sentence has the burden of establishing that the error was harmless." *Id*.  As the proponent of the sentence, the government bears the burden of establishing that the error of applying the two-level enhancement was harmless to Aguilar-Alonzo.  The government fails to address harmlessness of the error in its brief.  Accordingly, any argument as

11

No. 18-50627

to harmlessness is forfeited. However, even if we were to consider the issue, the district court's error was not harmless.

The district court determined that Aguilar-Alonzo's total offense level was 25. With a criminal history category of II, this offense level yielded a Guidelines range of 63 to 78 months of imprisonment. Without the two-level enhancement under § 2D1.1(b)(15)(A), Aguilar-Alonzo's total offense level would have been 23, yielding a Guidelines range of 60–63 months of imprisonment.[4] The district court's sentence of 70 months of imprisonment is entirely outside the appropriate Guidelines range. The record lacks evidence that the court intended to increase Aguilar-Alonzo's sentence beyond the Guidelines range. In fact, the district judge, at the sentencing hearing, stated that he intended to remain within the recommended Guidelines range. Consequently, the district court's error in imposing the § 2D1.1(b)(15)(A) enhancement affected the court's selection of the sentence it imposed. Accordingly, the error was not harmless, as it affected Aguilar-Alonzo's "substantial rights." *See* Fed. R. Crim. P. 52(a).

IV.

For the foregoing reasons, we VACATE Aguilar-Alonzo's sentence and REMAND for further proceedings consistent with this opinion.

---

[4] *See* U.S.S.G. ch. 5 pt. A (2016) (Sentencing Table). Absent additional factors, a total offense level of 23 together with a criminal history category of II yields a Guidelines range of 51 to 63 months' imprisonment. However, Aguilar-Alonzo's statute of conviction, 21 U.S.C. § 841, requires a mandatory minimum sentence of 60 months' (5 years) imprisonment for his offense. *See id*. § 841(b)(1)(B). Consequently, under U.S.S.G. § 5G1.1(c), the lower end of the correct Guidelines range would be 60 months, the "statutorily required minimum sentence," instead of 51 months.

No. 18-50627

JERRY E. SMITH, Circuit Judge, dissenting:

There is good news and bad news, and even more bad news. The good news is that, after substantial prodding, the panel majority finally acknowledges the correct standard of review of factfinding at sentencing. The bad news is that the majority mutilates that standard so that it is unrecognizable. The further bad news is that the Department of Justice is apparently asleep at the switch. I again respectfully dissent.[1]

I.

Without protest from the Department of Justice, which failed to move for rehearing en banc or even panel rehearing of the now-withdrawn first opinion,[2] the panel majority has set in stone this circuit's caselaw on the interpretation of the word "use" for purposes of U.S.S.G. § 2D1.1(b)(15)(A) (2016) and possibly beyond. The majority's interpretation of "use" is based on a foundation so flimsy that the most it can muster is an unpublished (and hence non-precedential) opinion from another circuit.[3] But that court didn't even decide—because it didn't need to—the issue at hand. The court affirmed the enhancement because the defendant explicitly admitted that he told his girlfriend he loved her to convince her to help with the crime. The court was not asked to decide whether "use" would have included passive, as distinguished from active, statements or actions, because those weren't the facts. So here, the

---

[1] *See United States v. Aguilar-Alonzo*, 936 F.3d 278, 287−90 (5th Cir. 2019) (Smith, J., dissenting).

[2] It surprises me that the Department of Justice wasn't alarmed by the majority's wholesale abandonment of the plausibility standard of review at sentencing. The panel opinion was no accident. The government's brief had carefully explained that "[a] factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole" (citations omitted). And my dissent highlighted that glaring error. But then the government was, and has remained, mute.

[3] *See United States v. Best*, 639 F. App'x 848 (3d Cir. 2016).

No. 18-50627

panel majority fashions its new rule by *ipse dixit* without agreement from any court that has interpreted this subsection of the guidelines.

## II.

At last, after withdrawing its suspect opinion, the panel majority now admits that at sentencing, "[a] factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole." (Citation omitted.) The majority omits, however, the further explanation that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234–35 (5th Cir. 2009). The majority makes no effort to explain how it is that this district judge's finding is implausible, except for the majority's unhelpful conclusional statement that it "is implausible as it is not supported by the record." That of course begs the question. Nor does the majority even try to explain how Judge David Counts's decision is not a "permissible view of the evidence."

Reversal here is error even under the majority's errant announcement that "'use' under § 2D1.1(b)(15)(A) [requires] active employment of affection." The majority's analysis seems to require direct evidence that the defendant explicitly said to his young girlfriend something like "I'll break up with you unless you help me with this crime." Indeed, the record contains no such explicit statement. But it doesn't matter. The panel majority refuses to acknowledge that circumstantial evidence can render a finding credible in the absence of direct evidence. The majority profoundly misses the point by not even mentioning the word "circumstantial."

The long and short of it is that, at least on appeal of a sentence, a defendant can't establish clear error without showing, as a necessary condition, that the district judge's factual finding is "implausible." Black's Law Dictionary

defines "plausible" as "[c]onceivably true," "possibly correct or even likely," "reasonable."[4]

The facts are that the defendant was twenty-one; his girlfriend was nineteen. He lived in a trailer behind her parents' house. They had been dating at least a year and had had sexual intercourse. She knew she was pregnant; the district judge declined to find, one way or the other, whether the defendant knew that.[5] But it is undisputed that the defendant remembered the carnal knowledge, and no evidence suggests that the relationship was still anything but close. As the majority explains, the defendant "requested that she accompany him 'to pick up the [marijuana].' She told investigators that she agreed to participate 'out of fear he would break up with her.'"

All agree that the sole question is whether "the defendant used fear . . . [or] affection[6] . . . to involve" his girlfriend in the illegal activity. To answer that, we ask only whether it is plausible—that is, "conceivably true," "possibly correct," or "reasonable"[7]—that the defendant did so. If it is any of those three, we must affirm. Importantly, the panel majority makes no effort to explore plausibility in terms of these well-recognized concepts."

I won't waste much space to recount that at federal sentencing, the evidentiary rules are considerably relaxed. For example, the sentencing judge can consider hearsay and a wide range of circumstantial evidence, and the defendant has no right to confront witnesses or conduct cross-examination. The

---

[4] *Plausible*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[5] At sentencing, the probation officer testified that the defendant "did explain that he knew she was pregnant at the time that the offense was committed."

[6] In this case, the concepts of fear and affection are intertwined. There's no suggestion that fear was used in the sense of physical threats or intimidation. Her fear, specifically, was that he would end the romantic relationship.

[7] BLACK'S LAW DICTIONARY, *supra*.

judge can make inferences from the evidence and can apply reason and experience. And he can rely on the findings in the presentence report.

At a minimum, the judge knew that the couple was in a one-year romantic relationship that wasn't on the wane. They had had sexual relations, and the girlfriend knew she was pregnant. She was only nineteen. She told the probation officer that she had "agreed to [defendant's] request [to assist him] out of fear he would break up with her."

From these bare facts, do we know, for a certainty, that asking his girlfriend to help with the crime was a threat to break up with her, leaving her with child and without companion, if she refused? We do not, and neither did the district judge. But what we do know (for a certainty) is that she felt that way. And nothing even remotely suggests that that feeling was unfounded. Her fear that the defendant would end the relationship is based on all the circumstances of which she was aware. That is her reading of their communications. It is unrefutable circumstantial evidence of the direct evidence that is absent: that the defendant made a threat to end the romance if his girlfriend didn't assist.[8]

To prevail on appeal, the defendant must convince this court that the district judge's inference from the circumstantial evidence is an hallucination that isn't "conceivably true," "possibly correct," or "reasonable." As I've already

---

[8] The government helpfully explains it this way:

> Additional circumstantial evidence supported the district court's finding. [The girlfriend's] expression of fear that she might lose the relationship if she declined his request should not be dismissed as a mere expression of her state of mind. It reflected and implied action on [defendant's] part, even if it was subtle and not revealed during the presentence investigation. Just as seeing one flinch circumstantially evidences an assailant's raised fist, her expression of concern about the relationship circumstantially pointed to [defendant's] use of her affection to involve her in his crime.

said, this defendant can't establish clear error if Judge Counts's finding is one of "two permissible views of the evidence." *Alvarado de Rodriguez*, 585 F.3d at 235. Well beyond being one of two permissible views, it is plainly the better one.

It is much more likely that the defendant exploited his relationship with his young girlfriend than that he picked her out randomly, from among the earth's inhabitants, to assist in the crime. This record easily permits the conclusion that the defendant, knowing this young woman was enamored, chose her, rather than someone else, to assist. By deciding as it has, however, the panel majority necessarily implies that Judge Counts engaged in a flight of fancy by entertaining an explanation that is outside the bounds of ordinary reason and human experience and that invents a story that defies logic and has no basis in the record. Although I'm confident that the majority doesn't mean to plaster Judge Counts with the accusation that he has lost his senses, that is the necessary implication of the majority's analysis, which I had hoped it would reconsider. Instead, it digs in, unwilling to take another look or even to examine what it means for a judicial finding to be "plausible."

It is therefore error to suggest that Judge Counts's finding of fear or affection is pure caprice in the sense that it is not "conceivably true," that it is not "possibly correct," *and* that it is not "reasonable." The majority confronts none of this, content only to emphasize what it sees as a dearth of facts, ignoring the relaxed evidentiary procedures and the broad use of circumstantial evidence and inferences at sentencing.

Much to the contrary, however, there is plenty of circumstantial evidence from which—even given the majority's suspect holding that "use" requires active employment—this sentencing judge could have concluded that the defendant actively used affection by telling his girlfriend that he would break

17

No. 18-50627

up with her if she didn't help with the crime of conviction. That is, in fact, the most "credible" reading of the record.

## III.

At bottom, the decision to reject Judge Counts's factual finding does grave disservice to the federal sentencing regime that this court is sworn to uphold, whether the Department of Justice recognizes it or not. The majority's ruling undermines the carefully structured assignment of factfinding to an independent Article III judge.

The dynamics of federal sentencing are unique. Especially in venues such as Pecos, Texas, where this case is sited, scores of criminal defendants queue up for sentencing hearings on a routine day. The district judge carefully studies the presentence report, hears from the attorneys, and takes allocution. He or she then makes factual findings and announces a sentence. The evidentiary standards are relaxed for good reason, given the caseload. That is not to say that the proceedings are inadequate. Much to the contrary. They are the optimum way to make fair and accurate factual decisions and rulings of law in a relatively short period of time.

Here, the probation office prepared a comprehensive presentence report, with addenda, totaling more than twenty pages. Judge Counts conducted a twenty-minute sentencing hearing, with a transcript of seventeen pages, and made detailed findings, giving ample time for participation. The crush of the sentencing docket can be accommodated by dedicated judges and staff who read and apply the law to the facts. The procedures used to present and incorporate those facts get the job done well. Nitpicking by circuit judges who (with the best of intentions) misunderstand or misapply the standards of review do not.

No. 18-50627

"The standard for affirming a district court's factual finding is low: 'Where a factual finding is plausible in light of the record as a whole, it is not clearly erroneous.'"[9]  That is so except for this panel majority, which erects a standard much higher than that.  One "plausible" reading of the majority opinion is that circumstantial evidence is *verboten* at sentencing.  But an "agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances."[10]

Regrettably, the Department of Justice gives no heed to this corruption of the standard for factual findings at sentencing.  That will have consequences well beyond the case at hand.  It is bad news supplemented by even more bad news that leaves a court of appeals without a clue as to how to review factual findings at sentencing.  I therefore respectfully dissent.

---

[9] *United States v. Stubblefield*, No. 18-20169, 2019 U.S. App. LEXIS 33365, at *6−7 (5th Cir. Nov. 7, 2019) (per curiam) (quoting *United States v. Adam*, 296 F.3d 327, 334 (5th Cir. 2002)).

[10] *United States v. Martinez*, 921 F.3d 452, 467−68 (5th Cir. 2019), *petition for cert. filed* (U.S. Oct. 18, 2019) (No. 19-6375).