**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2101

_____

UNITED STATES OF AMERICA

v.

OMARI HOWARD PATTON,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-22-cr-00121-001)
District Judge:  Honorable William S. Stickman IV

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 9, 2024

_____

Before:  CHAGARES, Chief Judge, ROTH and RENDELL, Circuit Judges

(Filed: December 5, 2024)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

A jury convicted Omari Patton of attempting to provide contraband to an inmate and attempting to obtain contraband in prison. He was sentenced to sixty-three months in prison. Patton appeals his judgment of sentence. For the following reasons, we will affirm.

I.

We write primarily for the parties and recite only the facts essential to our decision. While serving prison time in a federal facility in New Jersey, Patton participated in a drug operation that involved smuggling K2 paper, which contains synthetic cannabinoids, into prison. K2 paper can be torn into tiny pieces to be smoked or chewed; a single sheet can sell for over a thousand dollars in prison. Patton enlisted his teenage son, Dashawn Burley, to mail K2 paper disguised as attorney mail into prison. The operation also included Patton's associate in Pittsburgh, a manufacturer who worked closely with that associate, and an inmate at a federal facility in New York.

Federal authorities discovered the drug operation and seized five envelopes containing K2 paper in prison. As relevant here, Patton and Burley were charged with conspiracy to distribute K2. Patton and Burley proceeded to a jury trial and were acquitted on this charge. A grand jury returned a second indictment against Patton and Burley for attempting to provide contraband to an inmate and attempting to obtain contraband in prison. This time, Burley entered a guilty plea, but Patton proceeded to trial, where a jury convicted him of these charges. The District Court sentenced him to sixty-three months in prison. Patton timely appeals his judgment of sentence.

2

II.[1]

Patton argues that the District Court's sentence was erroneous because it: (1) miscalculated the drug quantity attributable to Patton; (2) applied an aggravating role enhancement; (3) applied a use-of-affection enhancement; and (4) was substantively unreasonable. We will consider each contention in turn.

A.

Patton contends that the 26.6 kilograms of Converted Drug Weight ("CDW") attributed to his sentence is erroneous because the government tested only ten of the nineteen seized sheets for K2.[2] We disagree. It is permissible to extrapolate drug weight so long as "there is an adequate basis in fact for the extrapolation" and "the quantity was determined in a manner consistent with accepted standards of reliability." United States v. Titus, 78 F.4th 595, 600 (3d Cir. 2023) (quoting United States v. McCutchen, 992 F.2d 22, 25–26 (3d Cir. 1993)). In Titus, a doctor was convicted of writing illegal prescriptions. Id. at 599–600. We held that the district court erred in sentencing by extrapolating from only twenty-four patient files to infer the illegality of thousands of prescriptions because, inter alia, the doctor stored his lawful patient files and

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We review the District Court's factual findings relevant to the Sentencing Guidelines for clear error and its interpretation of the Guidelines de novo. United States v. Waterman, 755 F.3d 171, 174 (3d Cir. 2014). We may affirm the District Court on any ground supported by the record. United States v. Stanford, 75 F.4th 309, 316 (3d Cir. 2023).

[2] Because the Guidelines' drug quantity table does not list synthetic cannabinoids, the government's CDW calculation relied on the Guidelines' drug conversion table. See U.S.S.G. § 2D1.1 Application Note 8(D). Patton does not dispute this conversion.

3

prescriptions with illegal ones. Id. at 600. Here, by contrast, the government tested paper from each of the five seized envelopes, and all ten tested sheets were positive for Schedule I controlled substances — including five out of five sheets in one envelope. The District Court's conclusion that this extrapolation was reliable was not clearly erroneous.

B.

Patton argues that the District Court erred in applying the leader-or-organizer sentencing enhancement. We explained in United States v. Adair that under § 3B1.1 of the Sentencing Guidelines, an "organizer" is "is a person who generates a coherent functional structure for coordinated criminal activity" and a "leader" is "is a person with high-level directive power or influence over criminal activity." 38 F.4th 341, 354 (3d Cir. 2022).

Patton claims that he worked for himself and did not play a meaningful role in the drug operation but was only a "conduit." Patton Br. 29. But the record tells a different story. The District Court found that Patton was a leader or organizer because he created a network for K2 to be smuggled into prison, recruited accomplices including his son, and coordinated the drug deals. These findings were not clearly erroneous.

C.

Patton argues that the District Court erred in applying the use-of-affection sentencing enhancement. This enhancement applies if Patton "[1] used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, [2] the individual

4

received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and [3] the individual had minimal knowledge of the scope and structure of the enterprise." U.S.S.G. § 2D1.1(b)(16)(A) (cleaned up).[3]

Patton contends that he did not "use" affection to involve Burley in the drug operation. He relies on United States v. Aguilar-Alonzo, 944 F.3d 544 (5th Cir. 2019), for the proposition that "using" a person's affection must be active rather than passive and that a familial relationship, on its own, is insufficient. Id. at 551. We need not decide whether Patton's interpretation of "use" is correct because the record shows that Patton "used" Burley under any sense of the word. Patton developed an interest in Burley only after his son turned sixteen and obtained his driver's license, and when Burley "wanted a break" from running his father's errands, Patton did not "respect[]" his wishes and their relationship became "rocky." Appendix ("App.") 522. The District Court's findings that Patton took advantage of Burley's desire for a father figure and employed affection to recruit him into his drug operation were not clearly erroneous.

Patton also argues that the District Court did not address the third element of this enhancement and could not have found it satisfied because Burley's knowledge of the drug operation was "comprehensive and detailed." Patton Br. 38. But the District Court did make this finding. App. 534. And the record shows that Burley did not understand what the K2 paper was for and how it was being used. For example, Burley thought Patton intended to smoke the K2 himself to cope with an alleged addiction, and Burley

---

[3] The use-of-affection enhancement applies only if Patton receives a § 3B1.1 (aggravating role) enhancement. That is satisfied here, see supra Part II(B).

5

also believed that the checks inmates sent him were payments to his father for allegedly providing services as a jailhouse lawyer. The District Court's application of this enhancement was not clearly erroneous.

D.

Finally, Patton claims that his 63-month sentence was substantively unreasonable. Where, as here, the defendant's sentence is within the Guidelines range, we may presume that it is reasonable, United States v. Handerhan, 739 F.3d 114, 119–20 (3d Cir. 2014), and our review is "highly deferential," United States v. Bungar, 478 F.3d 540, 543 (3d Cir. 2007). We review for abuse of discretion whether his sentence reflects "rational and meaningful consideration" of the sentencing factors in 18 U.S.C. § 3553(a). United States v. Merced, 603 F.3d 203, 214 (3d Cir. 2010) (quoting United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)).

The District Court's sentence was not an abuse of discretion because it carefully considered the sentencing factors and arrived at a reasonable sentence. The District Court adequately explained why it rejected Patton's request for a downward variance and his argument that his sentence should run concurrently with a prior sentence he was serving. And the District Court did not abuse its discretion in counting the weight of the entire sheets. See United States v. Gurgiolo, 894 F.2d 56, 60–61 (3d Cir. 1990) ("Drugs containing detectable amounts of [illegal] substances . . . should be weighed as a whole, irrespective of purity."); see also United States v. Stewart, 761 F.3d 993, 1001 (9th Cir. 2014) ("Typically, drug quantity under the guidelines includes the entire weight or volume of any mixture containing a detectable amount of controlled substance, without

6

regard to purity or concentration." (citing U.S.S.G. § 2D1.1(c) n.(A))). Patton claims that a recent amendment to the Guidelines' commentary makes an exception for "synthetic cannabinoid diluted with an unusually high quantity of base material." U.S.S.G. § 2D1.1 cmt. 27(E)(i). But Patton acknowledges that the nineteen pages contained 9.5 kilograms of CDW — over a third of the total paper weight — and in any event the Guidelines accord the District Court discretion <u>not</u> to give a downward departure in this situation. <u>Id.</u> Thus, the District Court did not abuse its discretion in giving Patton a 63-month sentence.

III.

For the foregoing reasons, we will affirm the judgment of sentence imposed by the District Court.